# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

JADIAN ALTEMUS, an individual,

Plaintiff,

v.

AMAZON.COM SERVICES LLC, a
Delaware limited liability company; DOES
1–25,

Defendants.

Case No.:  22-cv-1275-DMS-BGS

**ORDER**
**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND**
**(2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pending before the Court are Defendant's motion for summary judgment (Def.'s Mot., ECF No. 45) and Plaintiff's motion for partial summary judgment (Pl.'s Mot., ECF No. 46).  In this diversity case, Plaintiff Jadian Altemus ("Plaintiff" or "Altemus"), a citizen of California, sues his former employer, Defendant Amazon.com Services LLC, ("Defendant" or "Amazon"), a Delaware corporation with its principal place of business in Washington State, asserting various employment discrimination-related claims under California's Fair Employment and Housing Act (FEHA) and other related claims.  Each party filed a response in opposition to the opposing party's summary judgment motion. (Pl.'s Opp'n, ECF No. 58; Def.'s Opp'n, ECF No. 57).  Both parties filed replies in support of their respective motions.  (Def.'s Reply, ECF No. 61; Pl.'s Reply, ECF No. 62.)  For the reasons explained below, the Court grants in part and denies in part

Defendant's motion for summary judgment, (ECF No. 45), and denies Plaintiff's motion for partial summary judgment (ECF No. 46).

## I.      STATEMENT OF FACTS

Amazon operates warehouses that receive, store, and ship consumer products sold on the Amazon.com site.  (James Decl. ¶ 5, ECF No. 45-32.)  Amazon's Information Technology ("IT") engineers set up and fix hardware and IT equipment, assist Amazon employees with IT issues, and conduct equipment safety audits.  (Ing Decl. in Supp. of Def.'s Mot.  ¶ 2, Ex. A ("Job Description"), ECF No. 45-3; *id.* Ex. O (Altemus Depo.) at 44–46, ECF No. 75-15.)   IT Engineers lift or move equipment such as "printers, monitors, carts, wireless access points, equipment for conveyors, [and] equipment for lighting."  (Altemus Depo. at 48–49.).

Amazon hired Plaintiff as an IT Support Engineer in October 2020.  (Altemus Decl. in Supp. of Pl.'s Mot. ¶¶ 2–3, ECF No. 46-1.)  Amazon typically scheduled Plaintiff to work five shifts of 9–12 hours each week.  (Altemus Depo. at 44.)  Plaintiff's duties included performing audits and supporting the proper functioning of equipment used in warehouses.  (Guha Decl. in Supp. of Pl.'s Mot. ¶ 5, Ex. D (Othon Official Capacity Depo.) at 19–20, ECF No. 46-2.)  Conducting the audits required Plaintiff to walk throughout the warehouses and replace equipment when necessary.  (*Id.*)  Due to a knee injury stemming from Plaintiff's earlier military service, Plaintiff asserts that he walked with a "bow-legged gait" at all times during his employment with Amazon. (Altemus Decl. in Supp. of Pl.'s Opp'n ¶ 2, ECF No. 58-2.)

In April or May 2021, Amazon assigned Eliseo Othon ("Othon") to be Plaintiff's new manager and Othon remained Plaintiff's manager for the rest of Plaintiff's employment with Amazon.  (Altemus Decl. in Supp. of Pl.'s Opp'n ¶ 14; Othon Official Capacity Depo. at 18.)  Plaintiff asserts that around August 1, 2021, Othon found Plaintiff sitting during a rest break and told Plaintiff he was not allowed to sit while at work, including on breaks.  (Altemus Decl. in Supp. of Pl.'s Opp'n ¶¶ 20–21.)  Amazon denies this, (Guha Decl. in Supp. of Pl.'s Mot. ¶ 6, Ex. E (Othon Indiv. Capacity Depo.) at 28,

ECF No. 46-2, at 324), and Plaintiff's deposition testimony contradicts his declaration. When asked whether Othon told him that he could not sit, Plaintiff testified that Othon told him: "I'm not saying that you cannot sit.  What I'm saying is you can't sit for four hours." (Altemus Depo. at 97.)  On August 2, 2021, Plaintiff emailed Othon reiterating his status as a disabled veteran and his need for periodic sitting breaks. (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 2, Ex. A at 17, ECF No. 58-1, at 22.)  Othon then forwarded Plaintiff's request to Othon's supervisor, Regional IT Manager Johnny Ralls. (*Id.* at 16, ECF No. 58-1, at 21.)  Othon explained to Ralls that Plaintiff is a candidate for a performance improvement plan and requires closer coaching and monitoring. (*Id.*)  The full context of Plaintiff's interactions with Othon and Amazon management during August 1–2, 2021 remains unclear.

On August 17, 2021, Othon seemingly placed Plaintiff on a performance improvement ("Focus") plan citing Plaintiff's "behavior" as the primary reason for his poor performance. (*Id.* ¶ 5, Ex. D at 157, ECF No. 58-1, at 275.)  However, Plaintiff was never informed that he was put on such a plan, and he did not learn of the plan until discovery. (Pl.'s Opp'n at 7 & n.1.)  Also on August 17, Amazon assigned Plaintiff to cover three large warehouses and another warehouse under construction in the San Diego region. (Othon Decl. ¶ 7, ECF No. 45-30.)  On August 18, 2021, Plaintiff sent an email to Othon and two of Amazon's Human Resources ("HR") employees, Kimberly McCown ("McCown") and Rehza Baraichi ("Baraichi"), requesting "extra time to walk" and to "complete tasks." (Altemus Depo. at 105–06; Ing Decl. in Supp. of Def.'s Mot. ¶ 20, Ex. R, ECF No. 75-18, at 3–4.)  Plaintiff attached medical documentation describing his knee injury. (Altemus Depo. at 107–09, 111–12; Ing Decl. in Supp. of Def.'s Mot. ¶ 21, Ex. S, ECF No. 74.)  Baraichi instructed Plaintiff to submit his documentation to Amazon's Disability and Leave Services ("DLS") team and explained to Plaintiff how he could formally request an accommodation. (Ing Decl. in Supp. of Def.'s Mot. ¶ 20, Ex. R, ECF No. 75-18; *see* Altemus Depo. at 122.)

Plaintiff then sent his medical documentation to DLS, which opened an

accommodation case on August 20, 2021, and assigned a case manager, Ann Jones. (Altemus Depo. at 123–24; Ing Decl. in Supp. of Def.'s Mot. ¶ 4, Ex. C, ECF No. 74-1.) Plaintiff provided medical documentation from 2014 and 2016 indicating that Plaintiff should refrain from lifting objects weighing over 30 pounds, walking or standing for over 4 hours per day, or bending or stooping for prolonged periods. (Ing Decl. in Supp. of Def.'s Mot. ¶ 4, Ex. C, ECF No. 74-1.) On August 31, 2021, DLS asked Plaintiff for clarification and more recent medical documentation. (Ing Decl. in Supp. of Def.'s Mot. ¶ 5, Ex. D, ECF No. 75-4, at 4.) Notably, Plaintiff testified at his deposition that his symptoms in August 2021 were *worse* than the symptoms described in the 2014 report, (Altemus Depo. at 113–14, 118–20); however, at oral argument, counsel for Plaintiff suggested that the 30-pound weight restriction was dated and irrelevant and Plaintiff could now lift up to 50 pounds without issue, (Prelim. Tr. of Hr'g on Cross Mots. for Summ. J., March 1, 2024). Beginning on September 13, 2021, Amazon provided a temporary accommodation. (James Decl. ¶ 14, ECF No. 45-32.) Amazon limited Plaintiff's assignments to smaller sites that did not require the use of stairs and had desks available where Plaintiff could sit. (*Id.*; Altemus Depo. at 137, 139; Ing Decl. in Supp. of Def.'s Mot. ¶ 6, Ex. E, ECF No. 75-5; *id.* ¶ 19, Ex. Q (McCown Depo.), at 54, 57–58, ECF No. 75-17, at 15, 18–19.)

Although Othon never informed Plaintiff that he placed him on a performance improvement plan, Othon updated the plan on September 17, 2021, and October 1, 2021, to note that Plaintiff's performance was steadily improving. (Guha Decl. in Supp. of Pl.'s Mot. ¶ 54, Ex. D, ECF No. 46-2, at 289–91.) In the update dated October 1, 2021, Othon recommended that Plaintiff be removed from the performance improvement plan and noted that Plaintiff met Amazon's "high performance bar" for his role and level in his 2021 performance review. (*Id.* at 289, 293.)

On November 1, 2021, Amazon DLS denied Plaintiff's request for a permanent accommodation on the grounds that the essential functions of his position required walking and standing up to 12 hours a day and lifting up to 49 pounds. (Jones Decl. ¶¶ 8,

10, ECF No. 45-36; Ing Decl. in Supp. of Def.'s Mot. ¶ 18, Ex. P (Jones Depo.) at 92–93, ECF No. 75-16, at 8–9.)   DLS informed Plaintiff of other open positions for which Plaintiff might be qualified and suggested that he apply to those jobs directly and send a notice of interest to DLS.  (*Id.*)  Plaintiff asserts that Amazon's denial of his requested accommodation stems from Othon's insistence that there was no possible way to accommodate what Othon characterized as Plaintiff's "'obvious disability – his 'limp.'" (Pl.'s Opp'n at 14; *see* Guha Decl. in Supp. of Pl.'s Opp'n ¶ 4, Ex. C (Jones Depo.) at 69–70, ECF No. 58-1, at 83–84; Othon Indiv. Capacity Depo. at 39, ECF No. 58-1, at 329.)  At his deposition, Othon admitted he noticed Plaintiff's limp when he first started managing him.  (Othon Indiv. Capacity Depo. at 39–40, ECF No. 58-1, at 329–30.)

On November 8, 2021, Colleen Rystedt ("Rystedt"), an accommodation consultant, emailed Plaintiff offering to identify alternative positions and asked for Plaintiff's availability for a call.  (Ing Decl. in Supp. of Def.'s Mot. ¶ 8, Ex. G, ECF No. 75-7.) Plaintiff acknowledged receiving the email. (Altemus Depo. at 164–65).  Amazon asserts it has no record that Plaintiff ever responded.  On November 17, 2021, Plaintiff emailed Othon, Ralls, and others at Amazon to explain that other employees in his position routinely sat throughout the day and that he believed Amazon could therefore easily provide Plaintiff's requested accommodation of sitting for up to 4 hours a day.  (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 8, Ex. G at 3, ECF No. 58-1, at 362.)  On November 29, 2021, Othon again pointed Plaintiff to the job description for his role and explained it required standing and walking more than four hours per day and working with equipment in the field.  (Ing Decl. in Supp. of Def.'s Mot. ¶ 10, Ex. I, ECF No. 75-9.)  Othon explained that it might often be possible to sit for more than four hours a day, but not every day.  (*Id.*)  On November 30, 2021, Rystedt asked Plaintiff to review descriptions for several alternative positions for which Plaintiff might be qualified.  (*Id.* ¶ 23, Ex. U, ECF No. 75-20.)

On December 1, 2021, McCown (from HR) explained to Plaintiff that Amazon's "Peak Season" was soon approaching, and Amazon could soon require him to resume

5

covering larger sites which could require more walking and climbing stairs.  (*Id.* ¶ 11, Ex. J, ECF No. 75-10.)  "Peak Season" is Amazon's busiest time of the year and runs from November to January when consumer purchases, staffing, operational activity, and use of equipment at Amazon warehouses increases significantly around the holidays.  (Othon Decl. ¶ 10, ECF No. 45-30.)  IT engineers resolve a greater number of technical issues during "Peak Season" than in other periods.  (*Id.* ¶ 11.)  Around December 6, 2021, James (from HR), Ralls (Regional IT Manager), and Othon jointly recommended a leave of absence for Plaintiff.  (James Decl. ¶ 15, ECF No. 45-32.)  Othon emailed DLS Operations Manager Steven Stalvey explaining that Amazon could not accommodate Plaintiff's restrictions permanently because the role required moving up to 49 pounds and "standing and walking during shifts lasting up to 12 hours" and Plaintiff did not meet these physical requirements.  (Othon Decl. ¶ 12, Ex. A, ECF No. 75-26.)  On December 10, 2021, Lorine Bowen, another accommodations consultant, notified Plaintiff that he would be placed on a leave of absence beginning on December 13, 2021, and that Amazon would begin an internal job search and reassignment process.  (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 7, Ex. F at 7–8, ECF No. 58-1, at 357–58.)  Plaintiff testified at his deposition that he understood Amazon intended for Plaintiff to undergo a job search process while he was on leave.  (Altemus Depo. at 158–59.)

On December 16, 2021, Bowen emailed Plaintiff to reinitiate the job reassignment process and explained to Plaintiff that because his "medical restrictions are longer term in nature," Amazon "would like to explore other roles" compatible with Plaintiff's physical restrictions and for which Plaintiff is qualified.  (Ing Decl. in Supp. of Def.'s Mot. ¶ 27, Ex. Y, ECF No. 75-24.)  The parties dispute whether Plaintiff responded.  Plaintiff testified at his deposition that he responded, (Altemus Depo. at 176), but no documentation of any response was produced in discovery and Amazon has no record of receiving a response.  (*See* Ing Decl. in Supp. of Def.'s Mot. ¶ 14, ECF No. 45-2; Def.'s Mot. at 9.)  Plaintiff asserts Amazon deactivated Plaintiff's access to Amazon systems at the start of his leave of absence and thereby restricted Plaintiff from accessing an internal

portal from which to view available positions. (Altemus Decl. ¶¶ 32–33, ECF No. 58-2.) Amazon asserts Plaintiff did not require such access because DLS referred Plaintiff to a publicly accessible website, http://www.amazon.com/gp/jobs, to search for jobs. (Def.'s Reply at 5; *see* Ing Decl. in Supp. of Def.'s Mot. ¶ 26, Ex. X, ECF No. 75-23, at 3.)

On January 14, 2022, Plaintiff filed an ethics complaint with Amazon stating that Othon placed him on an unpaid leave of absence for no reason. (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 8, Ex. G at 1–2, ECF No. 58-1, at 360–61.)[1] In an email dated February 17, 2022, Nancy McClellan, a regional accommodations consultant, asked Plaintiff (1) to confirm that he possessed two qualifications for a position that she had identified, and (2) to send her 3-5 positions that he had reviewed, such that she could contact the hiring manager for those positions. (Ing Decl. in Supp. of Def.'s Mot. ¶ 28, Ex. Z, ECF No. 75-25.) Plaintiff testified in his deposition that he "responded close to ten times," (Altemus Depo. at 184, ECF No. 75-15, at 151), but no responses were produced in discovery and Amazon has no record of receiving a response. (*See* Ing Decl. in Supp. of Def.'s Mot. ¶ 14, ECF No. 45-2; Def.'s Mot. at 9.) In an email dated February 23, 2022, McClellan communicated to Plaintiff that she had identified an appropriate position for Plaintiff, an "Amazon Care IT Support" position. (Ing Decl. in Supp. of Def.'s Mot. ¶ 29, Ex. AA, ECF No. 75-1.) Plaintiff asserts the description appeared to be for the same position he previously held, which he maintained he was qualified to perform. (Altemus Decl. ¶ 36, ECF No. 58-2.) Plaintiff asserts he contacted Amazon's Employee Resource Center ("ERC") by phone to express his willingness to accept the position. (*Id.*) Amazon asserts it has no record that Plaintiff ever responded and that if he had contacted ERC, he would have contacted the wrong team, because McClellan told Plaintiff to respond to her

---

[1] Plaintiff states that he filed second and third ethics complaints on January 17, 2022, and January 18, 2022, respectively, (Pl.'s Opp'n at 11), but these complaints do not appear in the record. Plaintiff cites to Exhibit F of the Guha Declaration at pages 12–13, however, Exhibit F ends at page 8. (*See* Guha Decl. in Supp. of Pl.'s Opp'n ¶ 7, Ex. F, ECF No. 58-1, at 350–58.)

directly.  (*See* Def.'s Mot. at 10; Ing Decl. in Supp. of Def.'s Mot. ¶ 29, Ex. AA, ECF No. 75-1.)  Further, it appears Plaintiff applied to four other positions without informing DLS.  (Def.'s Mot. at 9 n.3; *see* Walker Decl. in Supp. of Def.'s Mot., ECF No. 45-41 (application for "Senior Technical Account Manager" position); Nagy Decl. in Supp. of Def.'s Mot., ECF No. 45-45 ("Security Engineer III" position); Kerchinske Decl. in Supp. of Def.'s Mot., ECF No. 45-49 ("Security Engineer I" position); Pitera Decl. in Supp. of Def.'s Mot., ECF No. 45-53 ("Solutions Architect I" position).)  Amazon contends Plaintiff was qualified for two of the positions, but because Plaintiff failed to inform DLS that he had applied, the hiring managers for those positions did not know that Plaintiff was applying to seek reassignment as a disability accommodation.  (*See id.*)

Plaintiff asserts he continued to request access to Amazon's internal systems through March 2022.  (Altemus Decl. ¶ 37, ECF No. 58-2.)  On March 17, 2022, McClellan informed Plaintiff by email initially, and later by phone and mail, that Amazon had exhausted its search for alternative positions and would terminate his employment because Amazon could not accommodate Plaintiff in the role he held and could not find another position for him.  (Altemus Depo. at 196–97, ECF No. 75-15, at 163–64.)  His employment was officially terminated on March 25, 2023.  (Ing Decl. in Supp. of Def.'s Mot. ¶ 16, Ex. N, ECF No. 75-1.)  On April 6, 2022, DLS Appeals Case Manager Samantha Fariello ("Fariello") determined that Plaintiff had been terminated by mistake, but James (from HR) overruled the decision and declined to reinstate Plaintiff's employment.  (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 9, Ex. H, ECF No. 58-1, at 377–78.)

## II.    PROCEDURAL BACKGROUND

On July 5, 2022, Plaintiff filed a complaint in San Diego County Superior Court raising nine claims: (1) employment discrimination on the basis of veteran status, disability, age, and/or race; (2) whistleblower retaliation; (3) retaliation based on veteran status, disability, age, and/or race; (4) failure to prevent discrimination and retaliation; (5) retaliation based on exercise of employee rights; (6) failure to accommodate disability; (7) wrongful termination in violation of public policy; (8) unlawful business practices;

and (9) intentional infliction of emotional distress.  (*See generally* Compl., ECF No. 1-2.)  Plaintiff served the complaint on July 29, 2022.  (ECF No. 1-5.)  Amazon answered on August 26, 2022, (ECF Nos. 1-6, 2), and removed the case to federal court on August 29, 2022, asserting diversity jurisdiction.  (ECF No. 1.)

Discovery in this case concluded in November 2023.  (*See* Jt. Mot., ECF No. 37, at 3; Order, ECF No. 36.)  On November 30, 2023, the parties filed their cross motions for summary judgment or partial summary judgment.  (Def.'s Mot., ECF No. 45; Pl.'s Mot., ECF No. 46.)  On December 29, 2023, the parties filed responses in opposition to the motions.  (Pl.'s Opp'n, ECF No. 58; Def.'s Opp'n, ECF No. 57.)  On January 19, 2024, each party replied.  (Def.'s Reply, ECF No. 61; Pl.'s Reply, ECF No. 62.)  The Court heard oral argument on March 1, 2024.  (*See* Minute Entry, ECF No. 64.)

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56 a court may enter summary judgment on factually unsupported claims or defenses and "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A court must grant summary judgment if the "pleadings, depositions, answers to interrogatories, … admissions on file, … [and] affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1089 (S.D. Cal. 2020) (citing Fed. R. Civ. P. 56(c)).  "A fact is material when it affects the outcome of the case."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy

this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Once the moving party has satisfied this burden, the nonmoving party . . . must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial.'" *Martinez*, 481 F. Supp. 3d at 1089 (quoting *Celotex*, 477 U.S. at 324). "If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Celotex*, 477 U.S. at 325).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court makes no credibility determinations and draws no inferences, *see Anderson*, 477 U.S. at 255, and "view[s] the evidence in the light most favorable to the nonmoving party," *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001).

## IV.   DISCUSSION

### A.   Failure to Accommodate Disability (Count 6)

The Court denies Amazon's motion for summary judgment on the failure to accommodate claim. California's Fair Employment and Housing Act ("FEHA") "imposes on the employer the obligation to make reasonable accommodation." *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1003 (2009).

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California . . . [f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

Cal. Gov't Code § 12940(m). "To establish a reasonable accommodation claim, an employee must show that (1) the employee has a disability under FEHA, (2) the employee . . . [can] perform the essential functions of the position, and (3) the employer

failed to reasonably accommodate the employee's disability." *Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1029 (N.D. Cal. 2017) (citing *Scotch*, 173 Cal. App. 4th at 1009–10).  "A reasonable accommodation is 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job . . ..'" *Id.* (quoting *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008)).

Amazon argues that Plaintiff's claim fails because (1) Plaintiff could not "perform the essential functions of the position" and (2) Amazon attempted to reasonably accommodate Plaintiff's restrictions.  Plaintiff responds: (1) he was able to perform the essential functions of his job and had been doing so for over a year before he requested an accommodation in response to performance-related feedback from his manager; and (2) Amazon could have provided the reasonable accommodation of allowing Plaintiff to sit more frequently at work but failed to do so.

### 1.   Essential Functions

Amazon asserts that the essential functions of Plaintiff's IT Support Engineer position included moving up to 49 pounds and standing and walking during shifts lasting up to 12 hours.  Plaintiff responds based on his work experience that walking and standing for 12 hours a day was not an essential function of the job.[2]  It is beyond dispute that Plaintiff was unable to stand or walk for 12 hours a day.  But it is less clear whether Amazon's purported essential functions of the position were truly *essential* functions.

"[A]n employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (quoting *EEOC v. Wal-Mart*, 477 F.3d 561, 568 (8th Cir. 2007)).  Amazon argues that the walking or standing for up to 12 hours

---

[2] Amazon argues Plaintiff "does not dispute that the essential functions of his IT Support Engineer I . . . role included 'standing and walking during shifts lasting up to 12 hours." (Def. Reply at 2.)  This is not so.  While Plaintiff does not dispute that the position required some standing and walking during shifts, he *does* dispute that the position required constant walking or standing such that Amazon could not accommodate his request for more frequent sitting breaks or the ability to do some tasks while seated.

a day and lifting up to 49 pounds were essential functions of Plaintiff's position because they were listed as "responsibilities" in the job description for Plaintiff's position, which existed before Plaintiff was hired.  Amazon also points to the declarations of Othon who attested that such abilities were essential functions of the position.  Although this is some evidence that the functions were "essential," *see* Cal. Gov't Code § 12926(f)(2)(B) ("Evidence of whether a particular function is essential includes . . . [t]he employer's judgment as to which functions are essential" and "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job."), the evidence put forth falls short of a conclusive showing.

As an initial matter, it is unclear that the "essential functions" of a position can be defined in terms of physical requirements (e.g., walking or standing for up to twelve a day and lifting 49 pounds) as opposed to the actual functions an employee performs.  "The identification of essential job functions is a 'highly fact-specific inquiry.'"  *Lui v. City and County of San Francisco*, 211 Cal. App. 4th 962, 971 (2012) (quoting *Cripe v. City of San Jose* 261 F.3d 877, 888 n.12 (9th Cir. 2001)).  The FEHA statute defines "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f).[3]  The use of

---

[3] The statute continues:

(1) A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following:

(A) The function may be essential because the reason the position exists is to perform that function.

(B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.

(C) The function may be highly specialized, so that the incumbent in the position is hired based on expertise or the ability to perform a particular function.

(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:

(A) The employer's judgment as to which functions are essential.

(B) Written job descriptions prepared before advertising or interviewing applicants for the job.

(C) The amount of time spent on the job performing the function.

the term "essential job functions" contemplates the functions an employee performs as opposed to physical requirements necessary to perform those functions. *See id.* ("The function may be essential because the reason the position exists is *to perform that function*.") (emphasis added). "Walking or standing for 12 hours a day" and "lifting up to 49 pounds" are physical requirements but they are not the functions in and of themselves that an Amazon IT Support Engineer shows up to work to perform.

At oral argument, Amazon argued that these physical requirements are inextricably intertwined with the essential functions of the IT Support Engineer position because an employee in such a position must meet these physical requirements to perform the essential functions. (Prelim. Tr. of Hr'g.) Amazon referenced the job description for the position, which states: "Responsibilities include . . . [m]oving up to 49lbs as well as standing and walking during shifts lasting up to 12 hours." (Ing Decl. in Supp. of Def.'s Mot. ¶ 2, Ex. A, ECF No. 45-3.) But this language in the job description does not conclusively demonstrate that an employee in Plaintiff's position was required to walk or stand for up to 12 hours per day. In the light most favorable to Plaintiff, the language suggests that the employee may be required to work shifts as long as 12 hours and that "*during*" those shifts, the employee would need to walk or stand as necessary. The language does not demonstrate the impossibility of an accommodation in line with Plaintiff's request—the ability to take extra sitting breaks and perform certain tasks while seated such that Plaintiff does not stand or walk for over 4 hours per day.

At oral argument, Amazon cited *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359 (2015), for the proposition that physical requirements can be essential functions when they are inextricably intertwined with the actual functions performed. (Prelim. Tr.

---

(D) The consequences of not requiring the incumbent to perform the function.
(E) The terms of a collective bargaining agreement.
(F) The work experiences of past incumbents in the job.
(G) The current work experience of incumbents in similar jobs.
Cal. Gov't Code § 12926(f).

13

of Hr'g.)    The plaintiff in *Nealy* sued his employer, the City of Santa Monica, for disability discrimination and related claims.  *Id.* at 369–70.  The plaintiff claimed the City's failure to place him in a "solid waste equipment operator" position as an accommodation amounted to disability discrimination.  *Id.* at 373.  The City responded that the plaintiff could not perform "heavy lifting" which it argued was an essential function of the position.  *Id.* at 374–75.  Plaintiff indisputably could not perform heavy lifting.  *Id.*   The court found as a matter of law that "heavy lifting" was an essential function and that the plaintiff therefore could not perform the essential functions:

> There is no dispute heavy lifting was an essential function of the solid waste equipment operator—even for those who operated the automated side loader.  Nealy's deposition testimony and that of his supervisor suggest that while the automated side loader limited the manual duties of the operator, the vehicle did not eliminate the need for heavy lifting.  As the name implies, the vehicle automatically lifted trash bins, emptied them into the hopper, and placed the bins back on the street. The operator did this from inside the cab with a toggle stick or buttons.  But if the equipment did not grip the bin properly, the bin could fall into the hopper or onto the street.

*Id.* at 375–76.  Although not a common occurrence, the operator would be required to lift the bins whenever they fell over, either alone or with others, which involved heavy lifting of up to 50 pounds.  *Id.* at 376.  In this way, Amazon explains that a physical requirement like the ability to perform "heavy lifting" can be an "essential function" of a job.

But unlike *Nealy*, Amazon here has not pointed to an "incidentally inevitable" scenario arising in the ordinary course of the IT Support Engineer position that would require walking and standing for up to 12 hours per day (or even over 4 hours per day) and that conclusively demonstrates Plaintiff could not perform the essential functions. *See Gregory v. United Parcel Serv.*, No. 1:13-CV-2070-SMS, 2015 WL 5255395, at *6 (E.D. Cal. Sept. 9, 2015) (citing *Kees v. Wallenstein*, 161 F.3d 1196, 1199 (9th Cir. 1998)) (employee was not a "qualified individual" for the position of "feeder driver" because his knee injury precluded him from performing "incidentally inevitable" package delivery activities even though they were "not part of the regular duties").  That Plaintiff

had done the job for over a year with at least one positive performance review is some evidence that he could perform the "essential functions" of the job.  Plaintiff's observation that other employees were able to do his job with his requested accommodation (i.e., sitting breaks and the ability to perform certain tasks while seated) is additional evidence that Plaintiff could perform the essential functions of the position with reasonable accommodation.

In the alternative, Amazon argues that Plaintiff's inability to lift over 30 pounds renders him unable to perform the essential functions of the job.  (Prelim. Tr. of Hr'g.) Plaintiff's medical documentation restricts him from lifting over 30 pounds and his job required him to lift up to 49 pounds.  Plaintiff does not dispute that the ability to lift up to 49 pounds is an essential function of the job.  (Prelim. Tr. of Hr'g.)  Instead, he argues that his medical documentation is dated and that he had been able to lift 49 pounds without issue.  (*Id.*)  While this argument is in tension with evidence in the record,[4] it is not irreconcilable as a matter of law.  Accordingly, the Court concludes there is a triable issue as to whether Plaintiff could perform the essential functions of the position.

### 2.    Reasonable Accommodation

Further Amazon has not shown that providing the accommodation Plaintiff requested would be unreasonable.  "An employer is not required to make an accommodation 'that is demonstrated by the employer . . . to produce undue hardship to its operation.'"  *Scotch*, 173 Cal. App. 4th at 1003 (quoting Cal. Gov't Code § 12940(m)).  Restructuring an employee's responsibilities without eliminating its essential functions can be a reasonable accommodation.  *Nealy*, 234 Cal. App. 4th at 375.  An employer need not shift essential job duties to other employees to ensure the employee

---

[4] For example, Plaintiff testified at his deposition that the symptoms he experienced in August 2021 were *worse* than the symptoms described in the 2014 report.  (Altemus Depo. at 113–14, 118–20).  The 2016 report restricted Plaintiff to lifting no more than 30 pounds.  Although the 2014 report is not in the record before the Court, Plaintiff's deposition testimony suggests the 2014 report may have placed restrictions like those listed in the 2016 report.  (*Id.*)

requesting an accommodation keeps her job. *Carballow v. Comcast Inc.*, 13-cv-5572-MMC, 2015 WL 5257983, at *6 (N.D. Cal. Sept. 8, 2015) (citing *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir. 2006)). "The reasonableness of an accommodation is generally a question of fact." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 799 (N.D. Cal. 2015). FEHA defines an undue hardship as "an action requiring significant difficulty or expense, when considered in light of" several factors including "[t]he nature and cost of the accommodation," "[t]he . . . financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility." Cal. Gov't Code § 12926(u).

Amazon asserts it could not provide Plaintiff's requested accommodation because doing so would require "restructur[ing]" Plaintiff's position and "eliminating" some of its essential functions. (Def.'s Mot. at 12.) Amazon further asserts that it could not continue to provide Plaintiff's temporary accommodation because Plaintiff would be "required to cover larger sites requiring more walking as well as climbing stairs, as he would be called upon to resolve IT issues with greater frequency" as Peak Season approached. (Def.'s Mot. at 14.) It is true that "[u]nder the FEHA, an employer who has created a temporary light-duty assignment to accommodate an employee's disability has no obligation to make that assignment permanent." *Urbina v. Comcast Cable Commc'ns Mgmt., LLC*, No. 16-CV-03948-LB, 2017 WL 6550506, at *8 (N.D. Cal. Oct. 6, 2017), *aff'd*, 788 F. App'x 522 (9th Cir. 2019) (citing *Raine v. Burbank*, 135 Cal. App. 4th 1215, 1223–24 (2006)). But "the record contains scant evidence suggesting that the proposed accommodation would 'impose an undue hardship on the operation of'" Amazon's business. *Matkovich v. Costco Wholesale Corp.*, No. 15-CV-2057 FMO, 2016 WL 11668973, at *5 (C.D. Cal. Sept. 13, 2016) (quoting *Ross v. RagingWire Telecomms., Inc.*, 42 Cal. 4th 920, 938 (2008)). Genuine issues of material fact exist as to the reasonableness of Plaintiff's accommodation, whether it would pose an undue hardship, and whether it would require eliminating essential functions.

Because issues of triable fact exist as to whether Amazon could have reasonably accommodated Plaintiff in his existing IT Support Engineer position, the Court need not reach the question of whether Amazon could have provided a reasonable accommodation in the form of reassignment to another position.  This question becomes relevant only if a court finds no genuine issue of material fact that the employee cannot "perform the essential functions of his or her own position even with accommodation."  Cal. Code Regs. tit. 2 § 11068(d)(1) ("As a reasonable accommodation, an employer . . . shall ascertain through the interactive process[5] suitable alternate, vacant positions and offer an employee such positions, for which the employee is qualified" under certain circumstances including "if the employee can no longer perform the essential functions of his or her own position even with accommodation . . . ."); *see Urbina*, 2017 WL 6550506, at *9 (analyzing whether "reassignment to a vacant position" would be a reasonable accommodation only after concluding that the employee could not "perform the essential functions of his position even with accommodation").[6]  The Court therefore denies Amazon's motion for summary judgment on the failure to accommodate claim.

## B.    Employment Discrimination (Count 1)

Plaintiff asserts a claim for employment discrimination due to disability, veteran

---

[5] "The 'interactive process' required by the FEHA is an informal process with the employee . . . to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." *Wilson v. County of Orange*, 169 Cal. App. 4th 1185, 1195 (2009).

[6] FEHA entitles a disabled employee to "preferential treatment" in reassignment of existing employees. Cal. Code Regs. tit. 2 § 11068(d)(5). "[A]n employer has a *duty* to reassign a disabled employee if an already funded, vacant position at the same level exists." *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 970 (2014) (quoting *Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1389 (2000)). Plaintiff argues that Amazon violated this duty by acknowledging that Plaintiff had applied for two vacant positions for which he was qualified and failing to consider Plaintiff at all for those positions. (Pl.'s Opp'n at 18–19.)  Amazon argues that "Plaintiff bears responsibility for any breakdown of the interactive process because (1) Plaintiff did not participate in the search for an alternative position; and (2) Amazon made every effort to engage in a good-faith interactive process to identify a reasonable accommodation." (Def.'s Mot. at 16.)  While this issue may become relevant at trial, the Court need not reach it to dispose of issues raised in the pending summary judgment motions.  As Defendant notes, Plaintiff has not pled a separate claim for failure to engage in the interactive process.  *See* Cal. Gov't Code § 12940(n).  Accordingly, the Court declines to opine further on this issue.

status, age, and race.   For the reasons explained below, the Court grants Amazon's motion for summary judgment on theories of discrimination due to veteran status, age, and race, but denies Defendant's motion as to disability discrimination.

           1.   <u>Disability</u>

               *a.   Applicable Legal Standard*

FEHA "prohibits an employer from . . . discharging a person from employment because of a medical condition or physical disability." *Soria v. Univision Radio L.A., Inc.*, 5 Cal. App. 5th 570, 583 (2016) (citing Cal. Gov't Code § 12940(a)).   "In order to prevail on a discriminatory discharge claim under section 12940(a), an employee bears the burden of showing (1) that he or she was discharged because of a disability, and (2) that he or she could perform the essential functions of the job with or without accommodation," i.e., "that he or she is a qualified individual with a disability." *Nadaf-Rahrov*, 166 Cal. App. 4th at 962.

"[T]he applicable legal standards for a disability discrimination action vary depending on whether the case is based on direct or circumstantial evidence of discrimination." *Furlow v. TWC Admin., LLC*, No. 18-CV-01734-JAK, 2019 WL 9834332 (C.D. Cal. Aug. 23, 2019).   In *Wallace v. County of Stanislaus*, the California Court of Appeal explained:

> The distinction between cases involving *direct evidence* of the employer's motive for the adverse employment action and cases where there is only *circumstantial evidence* of the employer's discriminatory motive is critical . . .. [Where there is] no direct evidence that the adverse employment action taken by the employer was motivated by race, religion, national origin, age or sex . . ., proof of discriminatory motive is governed by the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). . . . The three-stage framework . . . do[es] not apply in discrimination cases where, like here, the plaintiff presents direct evidence of the employer's motivation for the adverse employment action.   In many types of discrimination cases, courts state that direct evidence of intentional discrimination is rare, but disability discrimination cases often involve direct evidence of the role of the employee's actual or perceived disability in the employee's decision to

implement an adverse employment action.

245 Cal. App. 4th 109, 122–23 (2016) (citations modified).

Here, as in *Wallace*, Plaintiff has presented "direct evidence of the employer's motivation for the adverse employment action." *Id.* at 128. Plaintiff has shown evidence suggesting Amazon placed him on an unpaid leave and terminated his employment in response to his request for an accommodation due to his disability and *because* Amazon determined that it could not provide the requested accommodation. Accordingly, the relevant test is whether Plaintiff's "disability is a substantial motivating reason for" Amazon's "decision to subject the employee to an adverse employment action." *Id.*

### b.   *Amazon's Motion*

Amazon argues that Plaintiff's disability discrimination claim fails for two independent reasons: (1) Plaintiff cannot show that "he could perform the essential duties of the IT Support Engineer I position even with a reasonable accommodation"; and (2) Plaintiff cannot show "that his disability was the 'substantial motivating factor'" for his termination after Amazon "made every effort to accommodate Plaintiff and to find him a new job within Amazon." (Def.'s Mot. at 18). The Court rejects both arguments.

First, for the reasons indicated above, the Court rejects Amazon's argument that Plaintiff has not shown that he could perform the essential duties of his position with a reasonable accommodation. There are genuine issues of material fact about the essential functions of Plaintiff's position and whether Plaintiff's requested accommodation would have been reasonable.

Second, the Court rejects Amazon's argument that Plaintiff cannot show that his disability was the "substantial motivating factor" for his termination because Amazon "made every effort" to accommodate Plaintiff and to find him a new job within Amazon. Even assuming Amazon did "ma[k]e every effort" to accommodate Plaintiff by attempting to find him another position he could perform despite his restrictions, (Def.'s Mot. at 14, 18), there is evidence in the record supporting Plaintiff's contention that he was discharged because of his disability. Plaintiff had informed Amazon of his disability

and requested an accommodation in the form of the ability to sit while performing some of his work tasks.  On November 1, 2021, Amazon denied Plaintiff's request for this accommodation and explained that the essential functions of the job required walking and standing up to 12 hours a day and lifting as much as 49 pounds.  (Jones Decl. ¶ 8.) Plaintiff has presented evidence suggesting that Amazon's denial of Plaintiff's requested accommodation stemmed from Othon's unwarranted insistence that there was no possible way to accommodate what Othon characterized as Plaintiff's "obvious disability" – his "limp." (Pl.'s Opp'n at 14.)  Consequently, on December 6, 2021, Amazon determined it could no longer provide the temporary accommodation due to the "Peak Season" (November–January) and placed Plaintiff on a leave of absence.  This is direct evidence that Amazon placed Plaintiff on unpaid leave *because* of his disability.  *See Gargano v. Plus One Holdings, Inc.*, No. 22-cv-735-DMS, 2023 WL 4768182, at *5 (S.D. Cal. July 26, 2023) (triable issue of fact existed as to whether employer discharged plaintiff due to disability where employer claimed it terminated plaintiff due its inability to further accommodate employee's disability).

And for the reasons explained above, triable issues of fact exist as to the reasonableness of providing continued accommodation, whether it would pose an undue hardship, and whether it would require eliminating essential functions.  In the light most favorable to Plaintiff, a trier of fact could find that Amazon placed Plaintiff on unpaid leave in response to Plaintiff informing Amazon of his disability.  Accordingly, the Court denies Amazon's motion for summary judgment on the disability discrimination claim.

> c.   *Plaintiff's Motion for Partial Summary Judgment as to Liability*

On the other hand, Plaintiff also has not shown the absence of a genuine issue of material fact that Amazon is liable for disability discrimination.  Although the trier of fact *could* find in favor Plaintiff on the disability discrimination claim, it *could* also find in favor of Amazon.  "[T]o prevail on a discriminatory discharge claim under section 12940(a), an employee bears the burden of showing (1) that he or she was discharged because of a disability, and (2) that he or she could perform the essential functions of the

job with or without accommodation," i.e., "that he or she is a qualified individual with a disability." *Nadaf-Rahrov*, 166 Cal. App. 4th at 962.  Plaintiff has not conclusively shown that he could perform the essential functions of the job with a reasonable accommodation.  As explained above, Amazon asserts that the essential functions of Plaintiff's position involved walking or standing for up to 12 hours a day and lifting up to 49 pounds.  Following discussions between Othon and Plaintiff concerning Plaintiff's job performance in August 2021, Othon provided constructive feedback and asked that Plaintiff perform his job duties more efficiently.  (*See* Altemus Decl. in Supp. of Opp'n ¶¶ 20–21, ECF No. 58-2; Othon Indiv. Capacity Depo. at 27:2–4, ECF No. 46-2, at 323.) It was at that point that Plaintiff requested accommodation in the form of periodic sitting breaks or the ability to perform some work tasks while seated.  (*See* Altemus Decl. in Supp. of Opp'n ¶ 21, ECF No. 58-2; Othon Indiv. Capacity Depo. at 28–32, ECF No. 46-2, at 324–28.)  As explained, Amazon responded that there would be times, during "Peak Season" (November–January) for example, when Amazon would need its IT Support Engineers to walk or stand for up to 12 hours a day to complete all required work tasks and during such times, it would not be reasonable to provide Plaintiff's requested accommodation.  In the light most favorable to Amazon, this shows that Plaintiff was not able to perform the essential functions of the job with or without a reasonable accommodation.  There remains a genuine issue of material fact as to (1) whether Plaintiff could have performed the essential duties of his position with or without an accommodation, and (2) whether Plaintiff's requested accommodation would have been "reasonable."  There is enough evidence in the record to allow the trier of fact to find for either party on these issues.

Because Plaintiff has failed to conclusively show that he could perform the essential functions of his position with a reasonable accommodation, he has failed to show a necessary element of his disability discrimination claim.  The Court need not address the other elements.  Accordingly, the Court denies partial summary judgment to Plaintiff on the issue of liability for disability discrimination.

2. <u>Veteran Status, Age, and Race</u>

"California has adopted the three-stage burden-shifting test" borrowed from *McDonnell Douglas*, 411 U.S. at 802, "for trying claims of discrimination" based on circumstantial evidence. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000). Plaintiff bears the initial burden of establishing a prima facie case and "must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion.'" *Id.* (quoting *Ibarbia v. Regents of Univ. of Cal.*, 191 Cal. App. 3d 1318, 1327–28 (1987)) (alteration in original). "[T]he plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Id.* at 355.

If "the plaintiff establishes a prima facie case, a presumption of discrimination arises." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The burden then "shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise . . . a genuine issue of fact' and to 'justify a judgment for the [employer], that its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 355–56 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254–55 (1981)) (alteration in original). The plaintiff then has "the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* at 356.

On summary judgment, a defendant has the initial burden either to "negate an essential element of [plaintiff]'s prima facie case" or to "establish a legitimate, nondiscriminatory reason for terminating [plaintiff]." *Wills v. Superior Court*, 195 Cal. App. 4th 143, 159–60 (2011). Plaintiff may then avoid summary judgment in favor of defendant by showing pretext or discriminatory animus. *Id.*

Plaintiff has put forward no evidence, circumstantial or otherwise, suggesting a

discriminatory motive due to his veteran status.   Plaintiff argues that evidence of discrimination due to veteran status is "inextricably linked" to evidence of disability discrimination because Plaintiff made a request for reasonable accommodations in connection with his disability stemming from his military service.  (Pl.'s Opp'n at 19.) But mere mention of his veteran status is not enough to show that it affected "the motivation of the decision makers."  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 433–34 (2007).  Further, Plaintiff conceded in his deposition that no one at Amazon had ever said anything derogatory to him about his military service.  (Altemus Depo. at 245, "I think in this case, we have got to remove the military service part.")  Because there is no evidence in the record suggesting a discriminatory motive, the court grants summary judgment in favor of Amazon on the issue of veteran status discrimination.

Plaintiff concedes there is no evidence in the record supporting theories of age and race discrimination and does not oppose summary judgment on those claims. Accordingly, Amazon is entitled to summary judgment on those issues.

## C.    FEHA Retaliation (Count 3)

FEHA "makes it unlawful for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA].'"  *Scotch*, 173 Cal. App. 4th at 1003 (quoting Cal. Gov't Code § 12940(h)) (alterations in original).  To state a claim for retaliation, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action[,] and (3) a causal link between the two."  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).   "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). "If the employer produces a legitimate reason for the adverse employment action, the

presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation." *Id.*

As best as the Court can decipher, Plaintiff's FEHA retaliation theory appears to be that "Plaintiff emailed Amazon repeatedly regarding . . . Othon's underhanded efforts to force [Plaintiff] into a rigged accommodations process" to which Amazon responded in retaliation by placing Plaintiff on unpaid leave. (Pl.'s Opp'n at 20.) First, Plaintiff has shown "involvement in a protected activity." A request for reasonable accommodation is protected activity. *See Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016) (quoting Assemb. B. 987, § 1(d), 2015-2016 Reg. Sess. (Cal. 2015)) (FEHA was amended in 2015 "to provide protection against retaliation when an individual makes a request for reasonable accommodation under these sections" effective January 1, 2016). The record shows that Plaintiff emailed Othon and other Amazon personnel on at least three occasions regarding his request for an accommodation—on August 2, 2021, (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 2, Ex. A at 17, ECF No. 58-1, at 22), on August 18, 2021, (Altemus Depo. at 105–06; Ing Decl. in Supp. of Def.'s Mot. ¶ 20, Ex. R, ECF No. 75-18, at 3–4), and on November 17, 2021, (Guha Decl. in Supp. of Pl.'s Opp'n ¶ 8, Ex. G at 3, ECF No. 58-1, at 362). Second, Plaintiff points to "an adverse employment action— being placed on unpaid leave.[7]

Amazon argues that Plaintiff has put forth no evidence of the third element – "a causal link." But Amazon has not carried its burden at summary judgment. "The causation required for the third element may be 'inferred from timing alone where an adverse employment action follows on the heels of protected activity.'" *Pinder v. Emp.*

---

[7] Plaintiff also points to Amazon secretly placing him on a performance improvement plan, (Pl.'s Opp'n at 20), but any theory of liability based on this act fails as a matter of law. It is uncontested that Plaintiff never knew he was placed on the plan until it surfaced in discovery. Amazon has produced no evidence showing that it ever informed Plaintiff of the plan. An action cannot be adverse to a plaintiff if that plaintiff is unaware of the action or of its impact on him. *See Yanowitz*, 36 Cal. 4th at 1052 (an adverse action "must materially affect the terms, conditions, or privileges of employment").

*Dev. Dep't*, 227 F. Supp. 3d 1123, 1147 (E.D. Cal. 2017) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008)) (citing *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1112–13 (2007)).  The trier of fact could find that but for Plaintiff's emails about his request for accommodation in August–November 2021, Amazon would not have placed Plaintiff on an unpaid leave in December 2021.[8] Accordingly, Plaintiff has established a prima facie case of FEHA retaliation.

Amazon must now "offer a legitimate, nonretaliatory reason for the adverse employment action." *Yanowitz*, 36 Cal. 4th at 1042.  Amazon argues that it has "a legitimate, non-retaliatory reason for concluding Plaintiff's employment: Plaintiff could not perform his role's essential functions." (Def.'s Reply at 8.)  But for the reasons discussed above, there are triable issues of fact as to whether Plaintiff could perform the role's essential function.  Accordingly, the Court rejects this argument and denies Amazon's motion for summary judgment on the FEHA retaliation claim.[9]

### D.    Labor Code Retaliation (§ 98.6(a)) (Count 5)

Labor Code Section 98.6 prohibits an employer from retaliating against an employee for engaging in conduct protected by California Labor Code § 96(k) (lawful conduct occurring during nonworking hours away from the employer's premises) and §§ 1101–06 (political activities and whistleblowing), or for raising an employee grievance claim with the California Workforce Development Agency as defined by § 2699.  Cal. Lab. Code § 98.6(a).  "While § 98.6(a) appears to broadly proscribe terminations for the exercise of 'any rights,'" "'the Legislature ha[d] indicated an intention to limit the proscription against terminations for the exercise of 'any rights' to the exercise of those

---

[8] Plaintiff also points to the ethics complaints he filed against Othon in January 2022.  But this came *after* the adverse employment action—being placed on unpaid leave in December 2021.  No reasonable trier of fact could infer causation from this sequence of events.  Plaintiff also appears to concede the lack of a theory of retaliation tied to his termination in March 2022.  (*See* Pl.'s Opp'n at 20.)

[9] However, the Court grants Amazon's motion for summary judgment to the extent the FEHA retaliation claim relies on theories of discrimination due to veteran status, age, or race.

rights 'otherwise protected by the Labor Code.'" *Hollie v. Concentra Health Servs., Inc.*, No. 10-cv-5197 PJH, 2012 WL 993522, at *6 (N.D. Cal. Mar. 23, 2012) (quoting *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87 (2004)) (alteration in original).  To establish a prima facie case, Plaintiff must allege that (1) he engaged in activity protected under Section 98.6, (2) Amazon subjected Plaintiff to an adverse action, and (3) a causal relationship exists between the two events. *See id.* at *4.

Plaintiff has not articulated the basis for his protected activity.  Plaintiff suggests that his complaint to Amazon leadership about the "no-sitting rule" constituted activity protected by Section 98.6, but he does not explain how.  *See White v. FedEx Corp.*, No. 04-cv-99 SI, 2006 WL 618591, at *4 (N.D. Cal. Mar. 13, 2006) (granting summary judgment for employer where "precise nature of [plaintiff's] retaliation claim is unclear" and plaintiff lacked evidence he engaged in protected activity before adverse action); *Weingand v. Harland Fin. Sols., Inc.* No. 11-cv-3109 EMC, 2012 WL 3537035, at *5–6 (N.D. Cal. Aug. 14, 2012) (dismissing Section 98.6 claim with prejudice where employee alleged that he complained to his superiors about required overtime without pay because such activity as a matter of law was not protected); *Hollie*, 2012 WL 993522, at *4–7 ("as a matter of law" the verbal and email complaints to supervisors about the employer's policy for overtime pay were met were not protected activities under Section 98.6). Accordingly, Amazon is entitled to summary judgment on this claim.

### E.    Whistle-Blower Retaliation (§ 1102.5) (Count 2)

California Labor Code § 1102.5 provides that "[a]n employer . . . shall not retaliate against an employee for disclosing information . . . to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute."  Cal. Lab. Code § 1102.5.  "[O]nce it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate,

independent reasons even if the employee had not engaged in activities protected by Section 1102.5." *Id.* § 1102.6.

It is not clear what Plaintiff's claim is under this statute.  Plaintiff suggests it could be his "objecting to discrimination" or submitting ethics complaints "regarding Defendant's failure to engage in a good-faith interactive process with him regarding potential reasonable accommodations."  (Pl.'s Opp'n at 20.)  Plaintiff provides no explanation why these activities amount to disclosures of "a violation of state or federal statute," Cal. Lab. Code § 1102.5, which must be shown to state a claim under the statute. Plaintiff has failed to show a triable issue of fact that Amazon retaliated in response to his disclosure of a violation of a federal or state statute because he has not identified a predicate violation of a federal or state statute.

To the extent Plaintiff alleges that his disclosure of a "no-sitting rule" or denial of "his right to sit on his rest breaks" was the predicate statutory violation, Plaintiff's claim still fails.  First, Plaintiff does not clearly explain how this conduct amounts to disclosure of a state or federal statute or point to which statute is violated.  Second, even if such a no-sitting rule amounted to a statutory violation, it is beyond dispute that no such "no-sitting" rule existed.  When asked in his deposition whether Othon told him that he could not sit, Plaintiff testified that Othon told him "I'm not saying that you cannot sit. What I'm saying is you can't sit for four hours."  (Altemus Depo. at 97, ECF No. 75-15, at 64.) Accordingly, Amazon is entitled to summary judgment on this claim.

**F.    Failure to Prevent Discrimination and Retaliation (Count 4)**

"Under FEHA, it is unlawful for an employer to 'fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring' in the workplace." *Furlow*, 2019 WL 9834332, at *14 (quoting Cal. Gov't Code § 12940(k)).  To prevail on a theory of failure to prevent discrimination or retaliation, the following must be shown: (1) "plaintiff was subjected to discrimination . . . or retaliation"; (2) "defendant failed to take all reasonable steps to prevent discrimination . . . or retaliation"; and (3) the defendant's failure "caused plaintiff to suffer injury." *Leland v. City & County of San*

*Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). A FEHA failure-to-prevent claim fails if the underlying claim for discrimination or retaliation fails.

Amazon's only argument is that Plaintiff cannot prevail on his failure-to-prevent claim because he cannot prevail on his discrimination and retaliation claims from which it derives. Because the Court finds that Plaintiff's claims for disability discrimination and FEHA retaliation survive summary judgment, Defendant's argument here fails. Accordingly, the Court denies Amazon's motion for summary judgment on this claim.[10]

### G.    Wrongful Termination (Count 7)

"Under California law, employment is at-will unless the parties contract otherwise." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). "California courts, however, have carved out a specific exception to this general rule: an employer will be liable if it terminates an employee in violation of public policy." *Id.* The elements for the tort of wrongful termination in violation of public policy are: "(1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 749 (9th Cir. 2011). In California, "disability discrimination can form the basis" of a wrongful termination claim. *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1161 (1998).

Plaintiff's claim for wrongful termination in violation of public policy overlaps with his claim for disability discrimination. *See Estes v. Monroe*, 120 Cal. App. 4th 1347, 1355 (2004) (the viability of plaintiff's tort claim based on disability discrimination is "tethered to the meaning of the FEHA"). Plaintiff's termination is the "principal adverse employment action that underlies her disability discrimination claim." *Furlow*, 2019 WL 9834332, at *14. Therefore, for the reasons set out in the analysis of Plaintiff's disability discrimination claim, genuine disputes of material fact exist regarding wrongful termination. Accordingly, the Court denies Amazon's motion for summary judgment on

---

[10] However, the Court grants Amazon's motion for summary judgment to the extent the failure to prevent claim relies on theories of discrimination due to veteran status, age, or race.

Plaintiff's wrongful termination claim.[11]

## H.   IIED (Count 9)

"A cause of action for intentional infliction of emotional distress ['IIED'] exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.* 6 Cal. 4th 965, 1001 (1993)).   "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' *Id.* (quoting *Potter*, 6 Cal. 4th at 1001).   "[T]he defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Id.* (quoting *Potter*, 6 Cal. 4th at 1001).

Plaintiff's IIED claim fails for two reasons.   First, Plaintiff points to no evidence in the record showing that Amazon engaged in "outrageous conduct beyond the bounds of human decency." *Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 945 (2017) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996)).   Plaintiff argues that the trier of fact can make such an inference from the conduct underlying the claims for employment discrimination, retaliation, and wrongful termination.   (*See* Pl.'s Opp'n at 22–23, arguing that "termination and many other adverse employment actions short of termination can constitute intentional infliction of emotional distress.")   Although an underlying FEHA violation can support an IIED claim, the plaintiff must still make a showing that all elements of the IIED claim are satisfied. *See Cornell*, 18 Cal. App. 5th

---

[11] However, the Court grants Amazon's motion for summary judgment to the extent the wrongful termination claim is premised on a theory of retaliation (*see supra* n.8, "Plaintiff . . . appears to concede the lack of a theory of retaliation tied to his termination in March 2022.") or theories of discrimination due to veteran status, age, or race.

at 945 (quoting *Light v. Dep't of Parks & Recreation* 14 Cal. App. 5th 75, 101 (2017)) (plaintiff "may pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates [the] FEHA *and also satisfies the elements of the claim*") (alteration and emphasis in original).  Here, Plaintiff has pointed to no evidence permitting the trier of fact to find that Amazon's underlying FEHA violations amounted to "outrageous conduct beyond the bounds of human decency." *Cornell*, 18 Cal. App. 5th at 945 (quoting *Janken*, 46 Cal. App. 4th at 80).  In addition, Plaintiff has pointed to no evidence in the record indicating that his emotional distress is severe.  "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009)) (alteration in original).  Accordingly, the Court grants Amazon's motion for summary judgment on this claim.

## I.      UCL (Count 8)

California's Unfair Competition Law ("UCL") proscribes business acts and practices that are "unlawful, unfair or fraudulent." *Rodriguez v. Mondelez Glob. LLC*, --- F. Supp. 3d ----, No 23-cv-57-DMS, 2023 WL 8115773, at *9 (S.D. Cal. Nov. 22, 2023) (quoting Cal. Bus. & Prof. Code § 17200).  The scope of the UCL is broad.  "By defining unfair competition to include any '*unlawful* . . . business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) (quoting Cal. Bus. & Prof. Code § 17200) (emphasis added in *Kasky*).  Under the UCL, only equitable remedies are available—injunctive relief and restitution.  *Id.* at 950.  Damages are not available.

Plaintiff brings a UCL claim premised on the various other legal violations explained above.  Defendant argues that the UCL claim fails because (1) Plaintiff has not pointed to a specific business "practice"; and (2) the underlying claims from which the UCL claim derive all fail.  Defendant's first argument, for which Defendant cites no authority, fails, because the UCL proscribes "unlawful . . . business *act[s]* or practice[s],"

Cal. Bus. & Prof. Code § 17200 (emphasis added), not just "practices." The second argument also fails because, as explained above, some of Plaintiffs claims which serve as predicate "unlawful acts" for the UCL claim, survive summary judgment. Accordingly, the Court grants summary judgment on this claim to the extent it is based on a predicate act on which the Court has granted summary judgment in favor of Defendant; and otherwise denies summary judgment on this claim.[12]

## V.    CONCLUSION

For the reasons explained, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Amazon's motion for summary judgment as follows:

(1) **Failure to Accommodate** (Count 6): The Court **DENIES** summary judgment on this claim.

(2) **Employment Discrimination** (Count 1): The Court **GRANTS** summary judgment in favor of Defendant to the extent the claim is based on discrimination due to veteran status, age, or race; and **DENIES** summary judgment to the extent it is based on discrimination due to disability.

(3) **FEHA Retaliation** (Count 3): The Court **DENIES** summary judgment on this claim.

(4) **Labor Code Retaliation (Section 98.6(a))** (Count 5): The Court **GRANTS** summary judgment in favor of Defendant.

(5) **Whistle-Blower Retaliation (Section 1102.5)** (Count 2): The Court

---

[12] However, the Court observes it likely lacks equitable jurisdiction over this claim. A federal court has equitable jurisdiction over a plaintiff's claim for equitable relief only when a plaintiff lacks an adequate legal remedy for the alleged harm. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020). It appears Plaintiff has an adequate legal remedy here. But Defendant raises no objection to equitable jurisdiction and the Court will not grant summary judgment on equitable jurisdiction grounds without full briefing. Nonetheless, Defendant may still raise an equitable jurisdiction challenge to this claim before trial. *See Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 500–01 (1923) (defendant waives objection to equitable jurisdiction if defendant "expressly consent[s] to action by the court" or "fail[s] to object seasonably"); *see also Turrey v. Vervent, Inc.*, No. 20-CV-00697-DMS-AHG, 2023 WL 6390620, at *5 (S.D. Cal. Sept. 29, 2023) (discussing waiver in the context of equitable jurisdiction).

**GRANTS** summary judgment in favor of Defendant.

(6) **Failure to Prevent Discrimination and Retaliation** (Count 4): The Court **GRANTS** summary judgment in favor of Defendant to the extent the claim is based on discrimination due to veteran status, age, or race; and otherwise **DENIES** summary judgment to the extent the claim is based on theories of retaliation or discrimination due to disability.

(7) **Wrongful Termination** (Count 7): The Court **GRANTS** summary judgment in favor of Defendant to the extent the claim is based on theories of retaliation or discrimination due to veteran status, age, or race; and otherwise **DENIES** summary judgment.

(8) **IIED** (Count 9): The Court **GRANTS** summary judgment in favor of Defendant.

(9) **UCL** (Count 8): The Court **GRANTS** summary judgment in favor of Defendant to the extent this claim it is based on a predicate act on which the Court has granted summary judgment in favor of Defendant; and otherwise **DENIES** summary judgment.

For the reasons explained, the Court also **DENIES** Plaintiff's motion for partial summary judgment on the issue of liability for disability discrimination (Count 1).

**IT IS SO ORDERED.**

Dated:  March 29, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court